UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____
                                         |
                                         |
ESSROC CEMENT CORP.,                     |
a Pennsylvania corporation, f/k/a Essroc Materials, Inc., |          Case No. 1:08-cv-974
                                         |
        Plaintiff,                       |          HONORABLE PAUL MALONEY
                                         |
              v.                         |
                                         |
CPRIN, INC., a Michigan corp. d/b/a CPR Indiana, Inc.; |
CP RECYCLING, INC., a Michigan corporation; |
PAUL D. KNOWLSON, individually;          |
CAROL KNOWLSON, individually;[1]          |
                                         |
        Defendants.                      |
                                         |
_____
_____
                                         |
                                         |
CPRIN, INC., a Michigan corp. d/b/a CPR Indiana, Inc.; |
CP RECYCLING, INC., a Michigan corporation; |
PAUL D. KNOWLSON, individually;          |
CAROL KNOWLSON, individually,            |
                                         |
        Counterclaimants,[2]              |
                                         |

_____

[1]

Today's decision dismisses all the claims against Warner Norcross & Judd LLP and Paul R. Jackson and grants their motion for Rule 11 sanctions, so they are no longer defendants in this action. Accordingly, the caption no longer includes their names.

[2]

Defendant CPRIN moved for leave to file a counterclaim, *see* Document #46. After hearing oral argument, the Honorable Hugh W. Brenneman, Jr., United States Magistrate Judge, granted CPRIN's motion on June 26, 2009 and deemed the counterclaim filed on that date, *see* Document Nos. 54 and 55. CPRIN asserts six counterclaims under Michigan law:

Count 1      Tortious Interference with Contract, Counterclaim ¶¶ 24-30
Count 2      Tortious Interference w/ Advantageous Business Relationship, *id.* ¶¶ 31-38
Count 3      Misappropriation of Trade Secrets, *id.* ¶¶ 39-50

```
                                              |
                    v.                        |
                                              |
ESSROC CEMENT CORP.,                  |
a Pennsylvania corporation, f/k/a Essroc Materials, Inc.,    |
                                              |
        Counterclaim Defendant.               |
                                              |
_____
```

**Opinion and Order**
*" Essroc 3 "*

**Granting Warner's Rule 12(b)(6) Motion to Dismiss Promissory Estoppel Claim (Count 9);**
**Granting Warner's Rule 12(b)(6) Motion to Dismiss Fraud Claim (Count 10);**

**Granting Warner's Motion for Rule 11 Sanctions;**
**Awarding Sanctions to Warner Pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927;**
**Directing Warner to File an Itemized List of Attorney Fees and Costs**

This is a diversity breach-of-contract and tort action. In March 2009, defendants Warner Norcross & Judd LLP and its employee, attorney Paul R. Jackson, Esq. (collectively "Warner") have filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss the two claims against them – promissory estoppel (count nine) and fraud (count ten). In May 2009, plaintiff Essroc Cement Corporation, formerly known as Essroc Materials, Inc. ("Essroc") filed an opposition brief and Warner filed a reply brief. *See* Docs. 38, 44 and 50. For the reasons that follow, the court will grant Warner's motion to dismiss count nine (promissory estoppel) and count ten (fraudulent misrepresentation). That leaves no claims against the Warner defendants.

---

| Count 4 | Statutory Conversion, Mich. Comp. Laws § 600.2919a, *id.* ¶¶ 51-60 |
| Count 5 | Common-Law Conversion, *id.* ¶¶ 61-65 |
| Count 6 | Breach of Contract, *id.* ¶¶ 66-77 |

CPRIN demands a jury trial on its counterclaims.

The case will consists of the ten claims which Essroc asserted against the four original defendants – CPR Indiana, Inc., doing business as CPRIN, and CP Recycling Inc. (collectively "CP")[3]; Paul Knowlson ("Knowlson", the owner of both companies, *see* Am Comp ¶ 19), and Carol Knowlson ("Ms. Knowlson") – and the original defendants' counterclaims as allowed by the Magistrate Judge's order of June 26, 2009.

**PRIOR OPINION:  Denial of Essroc's Application for TRO and PI**

Essroc filed the original complaint in October 2008 against CP and the Knowlsons.  *See* Original Complaint filed Oct. 17, 2008 ("Comp") ¶¶ 1-6 and 14.  Essroc applied for a temporary restraining order ("TRO") and a preliminary injunction ("PI") on October 28, and the defendants filed an opposition brief on October 29.  Without oral argument, the court denied Essroc's application by opinion and order issued on November 3, 2008.  *See Essroc Cement Corp. v. CPRIN, Inc. & CP Recycling, Inc.*, 593 F. Supp.2d 962 (W.D. Mich. 2008) (Maloney, C.J.) ("*Essroc 1*").

On the first factor of the four-part test for PI relief, the court determined that Essroc failed to show a likelihood of success on the merits.  This court wrote,

> Essroc fails to cite *a single* Michigan decision – let alone binding decisions from the Michigan Supreme Court or the Michigan Court of Appeals – explaining the elements of its contract and tort causes of action and showing why it is likely to prevail on the merits of each of its claims.  Even without the benefit of an answer or dispositive-motion briefs from the defendants, Essroc could easily anticipate at least some of the defendants' arguments against Essroc's claims, and perhaps their main argument.  Essroc's own TRO brief attaches a February 26, 2008 letter wherein the defendants' counsel states the following legal position to Essroc:

---

[3]

Essroc contends that CPRIN and CP Recycling, Inc. are interchangeable entities and/or *alter egos* of one another, but those companies appear to disagree, and the instant motion to dismiss by other defendants does not implicate the issue.  The court refers to CPRIN and CP Recycling, Inc. together as "CP" merely for convenience, not to intimate any position on the *alter ego* issue.

On February 15, 2008, Essroc employees summarily, and without notice, prevented CP employees and contractors from performing any further services under the Agreement and informed them that the Agreement was terminated . . . .

Section 2 of the Agreement provides:

> The term of this Agreement ("the Term") shall be for three (3) years commencing on January 1, 1994. It shall be automatically extended for an additional one (1) year period provided that Essroc receives at least Eight Million Five Hundred Thousand Dollars ($8,500,000) from the Gross Receipts collected by CP for the calendar year 1994.

> Except as provided in the preceding sentence, this Agreement shall also be automatically renewed for additional one (1) year periods ("Renewal Terms") unless either party at least ninety (90) days prior to the expiration of the Term or any Renewal Terms shall notify the other in writing that it wishes to terminate this Agreement. Following any such termination notice the parties shall use their best efforts to provide a smooth transfer to the successor HWDF supplier.

> Because the Agreement is year-to-year and terminable only upon 90 days' written notice prior to the end of any particular year, Essroc's termination was in breach of the breach of the Agreement, which breach has caused our client significant damages. * * *

Essroc's TRO brief makes no attempt to show why this court or a jury, applying Michigan law, would be likely to conclude that the defendants, rather than Essroc, breached the parties' agreement.

*Essroc 1*, 593 F. Supp.2d at 968-69 (brief citation omitted). On the second factor, the court

determined that Essroc failed to show that it would suffer irreparable harm in the absence of PI

relief, because it failed to show that monetary damages could not make it whole. *See id.* at 969-70.

Because failure on either of the first two factors is sufficient to deny PI relief, the court declined to

-4-

discuss the third and fourth factors. *See id.* at 970-71.[4]  Finally, the court agreed with CP that

> Essroc is essentially seeking security for a potential future award of money damages, and Essroc has not cited any authority permitting this court to do so.  Essroc cites no authority holding that the feared inability to collect a prospective judgment is an adequate basis for preliminary injunctive relief.
>
> On the contrary, it appears that Essroc is merely an unsecured creditor of CP, and "an unsecured creditor has no rights at law or in equity in the property of his debtor." *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund*, 527 U.S. 308, 330 (1999), *followed by Elliott Bros. Steel Co. v. Michigan Metals, Inc.*, 2008 WL 2697287, *2 (E.D. Mich. July 2, 2008); * * *.
>
> There are exceptions to this rule, but Essroc has not attempted to show that any of the exceptions applies here. * * *
>
> In essence, Essroc "is asking this Court to ignore over 200 years of American jurisprudence prohibiting the equitable relief of freezing a party's 'unencumbered assets . . . before their claims have been vindicated by judgment.'" *RBS Asset Finance, Inc. v. Bravo*, 2005 WL 3008581, *2 (E.D. Mich. Nov. 9, 2005) (citing *Adler v. Fenton*, 65 U.S. 407 (1861), and *Grupo Mexicano*, 527 U.S. 308).  This the court will not do.

*Essroc 1*, 593 F. Supp.2d at 971 (¶ break added).

This court issued *Essroc 1*, denying Essroc's application for a TRO and PI, on November 3, 2008.  About two weeks later, the parties reached an escrow agreement.  According to a stipulation prepared by Essroc, jointly submitted by the parties, and entered by this court, CP agreed to deposit $244,472.36 into an interest-bearing escrow account at Fifth Third Bank, to be held there until further order of the Court.  *See* Documents 19 and 20.

# BACKGROUND

---

[4]

The CP defendants jointly moved to dismiss the original complaint under FED. R. CIV. P. 12(b)(6).  The court denied the motion without prejudice as moot when Essroc amended the complaint. *Essroc Cement Corp. v. CPRIN, Inc. & CP Recycling, Inc., Warner Norcross & Judd LLP & Jackson*, 2009 WL 129809 (W.D. Mich. Jan. 20, 2009) (Maloney, C.J.) ("*Essroc 2*").

Essroc receives liquid waste-derived fuels ("LWDFs") and used them for "ancillary / energy recovery" at its plant in Logansport, Indiana. *See* Am Comp ¶ 13. Essroc had a written LWDF Services and Supply Contract with CP and the Knowlsons from January 1, 1997 through the contract's stated expiration date of December 31, 1999. *See* Am Comp ¶ 12 and Exhibit ("Ex") A (expired 1997-1999 LWDF Services Contract). After the contract expired, the parties continued their business relationship for more than six years – from January 2000 until March 2006 – at first "generally follow[ing] the procedures of the Expired Contract." *See* Am Comp ¶ 13-14.

Both under the 1997-1999 contract and thereafter, CP handled Essroc's sales, customer support, billing and collection of receivables for "tipping fees" owed by Essroc's customers; in return, Essroc paid CP a monthly fee of $58,200. *See* Orig Comp ¶¶ 11-12; Am Comp ¶ 13.

Essroc alleges that on February 20, 2006, defendant CPRIN's Vice-President ("VP") T. Terry Tousey wrote a letter "insist[ing] on an amendment of the relationship to a flat fee basis of $58,200 per month." Am Comp ¶ 16, citing Ex B. The CPRIN VP's letter also "suggested that the flat-fee pricing schedule would begin in March of 2006, and would then continue until at least December 31, 2006." Am Comp ¶ 16. The parties in fact adopted that arrangement in March 2006 and continued it until February 2008. *See* Comp ¶ 17. Each month, CP sent Essroc a statement listing the monthly gross revenue (including tipping fees), credits issued, the volume of LWDF received and burned, and the LWDF net revenue belonging to Essroc after the deduction of CP's monthly fee. *See* Am Comp ¶ 18 and Ex C (monthly statements sent from CP to Essroc from March 2006 onward); *see also* Orig Comp ¶ 13 and Ex B (January 10, 2008 letter).

In late 2007, Essroc determined that market conditions – namely, a reduction in regional

demand for cement – required it to reduce operations at the Logansport plant from two kilns to one kiln effective January 1, 2008. Essroc advised CP of this reduction and asked to reduce CP's monthly fee accordingly, but CP refused to renegotiate. *See* Am Comp ¶¶ 21-23.

**On February 14 or 15, 2008, Essroc notified CP and Knowlson that it was terminating the (unwritten) LWDF Services Agreement immediately and taking over the LWDF sales, support, billing and collection services internally.** *See* Am Comp ¶ 24; *see also* Orig Comp ¶ 18 and Ex E (letter stating that termination date was February 15, contrary to Original and Amended Complaint's stated termination date of February 14). On February 10, 2008, CP issued its final monthly statement identifying monthly net receivables owed to Essroc of $418,823.76. *See* Am Comp ¶ 25 and Ex G (Accounts Receivable Aging Schedule and February 2008 billing statement).

Essroc has made numerous written demands that CP turn over the $418,823.76 in February 2008 net receivables, but CP has failed and refused to pay. *See* Am Comp ¶¶ 26-27 and Ex D (March 10, 2008 letter from Essroc counsel Metzger to CP counsel Jackson). Essroc alleges, with contradiction from the defendants, that CP contends that it is withholding that amount as damages for what it believes was Essroc's wrongful termination of the Agreement, and that CP states that the funds are being held in a trust fund account administered by CP's then-counsel, Warner Norcross. *See* Am Comp ¶¶ 28-29 and Ex E (Feb. 26, 2008 letter of CP counsel to Essroc). Essroc alleges that Carol Knowlson knew about these facts and knowingly participated in the wrongful actions of the other defendants. *See* Am Comp ¶ 30.

**In Count 1, Breach of Contract, Essroc claims** that by withholding the $418,823.76, CP and the Knowlsons breached the agreement which was established by the parties' course of dealings subsequent to the expiration of their written contract on December 31, 1999 and by the February 20,

2006 letter of CP's VP Tousey inaugurating the flat-fee arrangement ("the agreement"). *See* Am Comp ¶¶ 32-34 and Ex B. Essroc contends that it fully satisfied its obligations under the agreement and that, despite its termination of CP's services, Knowlson was still obligated, by the terms of the agreement, to pay monthly net revenues to Essroc. *See* Am Comp ¶¶ 41-42. Essroc alleges that CP and Knowlson breached the agreement by failing to remit monthly net revenues to Essroc for tipping fees collected with regard to LWDF from October 2007 through February 2008. For the alleged breach, Essroc seeks not only the $418,823.76 in compensatory damages, but also its lost profits.

**In Count 2, Conversion, Essroc claims that the CP entities and Paul Knowlson** committed statutory and common-law conversion by knowingly receiving and using for their own benefit the accounts receivable owed to Essroc, as identified in CP's counsel's letter to Essroc on February 20, 2006. *See* Am Comp ¶¶ 48-58 (citing MICH. COMP. LAWS § 699.2919a and *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600 (Mich. 1992)). **In Count 3, Embezzlement, Essroc claims that the CP entities and Paul Knowlson** committed civil embezzlement in violation of MICH. COMP. LAWS § 699.2919a. *See* Am Comp ¶¶ 61-65.

**In Count 4, Fraud, Essroc claims that the CP entities and Paul Knowlson committed common-law fraud** by representing that it would issue a monthly LWDF net revenue check to Essroc when they knew or should have known that the final monthly net receivables payment (about $418,000 for February 2008) was never going to be paid to Essroc. *See* Am Comp ¶¶ 67-70. Essroc alleges that CP and Paul Knowlton intended for Essroc to rely on the false representation, and that it did rely to its detriment, i.e., by not acting to secure those receivables. *See* Am Comp ¶¶ 71-73.

**In Count 5, Essroc claims that Carol Knowlson aided in the concealment of stolen, converted, and/or embezzled property.** Essroc alleges that Carol Knowlson had actual or

constructive knowledge that CP and Knowlson were not entitled to keep Essroc's February 2008 monthly net revenues and use them to pay personal or corporate expenses. *See* Am Comp ¶¶ 75-77. Essroc alleges that Ms. Knowlson knowingly aided the concealment by "effectuating the retention by Defendants P. Knowlson and CP directly for P. Knowlson and CP of the monthly net revenues of Essroc, and [by] failing to advise Essroc of the attempted and/or effectuated transfers", causing damage to Essroc. *See* Am Comp ¶¶ 78-79. Essroc seeks treble damages from Ms. Knowlson pursuant to MICH. COMP. LAWS § 699.2919a(1)(b), which amounts to more than $1.25 million, plus interest, attorneys fees and costs pursuant to MICH. COMP. LAWS § 699.2919a(1)(a). *See* Am Comp ¶ 80 and following unnumbered paragraph.

**In Count 6, Essroc claims that all four CP defendants** engaged in a common-law civil conspiracy to conceal Essroc's stolen and/or embezzled funds. Am Comp ¶¶ 81-85.

**In Count 7, Essroc seeks to pierce the corporate veil.** Namely, Essroc asks the court to treat CPRIN, Inc. and CP Recycling, Inc. as the same entity and to hold Paul Knowlson personally liable for the torts allegedly committed by those corporate defendants. *See* Am Comp ¶¶ 86-100.

**In Count 8, Essroc asserts a claim for "Claim and Delivery" under Michigan common law.** Essroc alleges that defense counsel stated in February 26, 2008 that Essroc is entitled to payment of the $418,823.76 in accounts-receivable funds, and that CP / Paul Knowlson would place those funds in escrow. *See* Am Comp ¶¶ 102-109. Essroc alleges that these funds have not been commingled with other funds and are not subject to any tax, fine, judgment or other execution. *See* Am Comp ¶ 110. "Should the Court not be willing to grant the entire Claim and Delivery," Essroc asks the court to at least award immediate possession of the amount to which it has an allegedly-undisputed right, $244,472.36. *See* Am Comp ¶ 111.

In Count 11, Essroc asserts a claim for unjust enrichment / *quantum meruit* against the CP companies and Paul Knowlson.  *See* Am Comp ¶¶ 137-38.  **In count 12**, Essroc invokes 28 U.S.C. § 2201 and seeks a declaration that "there was no contractual relationship between the parties according to the terms of the Expired Contract as of February 14, 2008."  Am Comp ¶¶ 140-52.

The only claims against Paul Jackson and Warner, Norcross & Judd (collectively "Warner") are counts 9 and 10.  In count 9, Promissory Estoppel, Essroc notes that on February 26, 2008, twelve days after Essroc terminated its agreement with CP, defendant Paul R. Jackson, then counsel for CP and the Knowlsons, "sent correspondence to Essroc indicating that the accounts receivable at issue in this matter would be placed into escrow, pending the resolution of the dispute."  Am Comp ¶¶ 113-114 and Ex E (Jackson's 2/26/2008 letter to Essroc).  Essroc immediately goes on to clarify, however, that Jackson's February 2008 letter merely "*implicitly* promised . . . that the funds at issue would be escrowed pending resolution of the matter."  Am Comp ¶ 115 (emphasis added).  Essroc reasons that Jackson/Warner knew or should have known that Essroc would rely on the promise to escrow funds and, because of that reliance, would refrain from taking more aggressive or active steps to secure the amount it believes it is owed:

> Because of the representation, Essroc did not immediately move for seizure of the accounts receivable, believing that if the moneys were placed into escrow, that on resolution of the dispute they would be retrievable without problem.  * * * Essroc detrimentally relied upon Defendant . ..  Making the representation that the funds would be escrowed.  Had Defendant . . . not made the representation that the accounts receivable were escrowed, Essroc would have initiated proceedings to recoup those accounts receivable at an earlier date.

Am Comp ¶¶ 118 and 120-21.  More than three months later, on June 16, 2008, defendant Jackson sent a letter to Essroc indicating that CPRIN was insolvent and had assets of only $31,000, *see* Am Comp ¶ 119, and Essroc fears that the funds that were supposed to be escrowed "have been

dispersed [sic, disbursed] and may not be available for recovery", Am Comp ¶ 122.  **In count ten,**

**Fraudulent Misrepresentation, Essroc** alleges that when Jackson stated in February 2008 that the

accounts receivable at issue would be placed into escrow pending resolution of the dispute, he knew

or should have known that those funds were not being escrowed.  Am Comp ¶¶ 126-27.  In so doing,

Essroc claims, Jackson/Warner committed the torts of intentional and/or reckless misrepresentation,

with the intention that Essroc rely on his representation, *see* Am Comp ¶¶ 130-33, and Essroc did

rely thereon, suffering substantial economic losses as a result, *id.* ¶¶ 134-35.


## THE PARTIES' POSITIONS REGARDING CLAIMS AGAINST CP / Knowlsons

The CP defendants' version of events and legal position is stated in a February 26, 2008

letter from the CP defendants' counsel to Essroc:

> On February 15, 2008, Essroc employees summarily, and without notice, prevented
> CP employees and contractors from performing any further services under the
> Agreement and informed them that the Agreement was terminated and that they were
> to leave.

> Section 2 of the Agreement provides:

>> The term of this Agreement ("the Term") shall be for three (3) years
>> commencing on January 1, 1994.  It shall be automatically extended
>> for an additional one (1) year period  provided that Essroc receives
>> at least Eight Million Five Hundred Thousand Dollars ($8,500,000)
>> from the Gross Receipts collected by CP for the calendar year 1994.

>> Except as provided in the preceding sentence, this Agreement shall
>> also be automatically renewed for additional one (1) year periods
>> ("Renewal Terms") unless either party at least ninety (90) days prior
>> to the expiration of the Term or any Renewal Terms shall notify the
>> other in writing that it wishes to terminate this Agreement.
>> Following any such termination notice the parties shall use their best
>> efforts to provide a smooth transfer to the successor HWDF supplier.

> Because the Agreement is year-to-year and terminable only upon 90 days' written

notice prior to the end of any particular year, Essroc's termination was in breach of the breach of the Agreement, which breach has caused our client significant damages. *Pending quantification of these damages and discussing this matter with you, CP Recycling will be escrowing all Gross Receipts collected by it, less the commission and expenses provided by the Agreement, with this law firm.*

TRO Br, Ex F at 2-3 (second paragraph break added) (emphasis added).

In a June 16, 2008 letter to Essroc, defendant CP's counsel stated as follows:

We are in the process of winding up the affairs of CPRIN, Inc. We anticipate that the Corporation will be dissolved sometime later this summer. CPRIN had only one line of business and, as you know, that ended in February of this year. I am looking at the accountant's preliminary balance sheet for the period ending June 30, 2008, which he has asked me not to share until he has had a chance to Am Completely confirm all numbers. It will, of course, be available to you at that time.

However, I can say that the Corporation is, as it has been all this year, insolvent. It shows assets on its books totaling about $31,000 of which about $19,000 is in cash, $10,000 in receivables, and $2,000 in net property and equipment (in your client's possession). Liabilities total approximately $406,000, including trade accounts payable totaling $265,000 and notes payable to prior shareholders totaling about $140,000. Not included in the balance sheet, at the present time, is CPRIN's [contemplated] claim against Essroc for breach of contract.

If the theory of wrongful termination of an annually renewable contract between our clients would be upheld it would mean, I believe, that CPRIN could claim damages in the amount of $643,500 ($58,500 per month x 11 months). That is presently not on the balance sheet.

We are in the process of settling up with CPRIN's principal creditors: CP Recycling; Victor Potts; and Pat Jarrett. We will also have to deal with the other trade accounts creditors which, on June 30, were owed approximately $129,000.

Your client has in its possession certain equipment that is the property of CPRIN, among which is certain software developed by our client. Our proposal to you is that CPRIN will transfer to Essroc all of its right, title and interest in and to the software in exchange for delivery of possession of the tangible property. With this mutual consideration, there would be a mutual release of all claims.

Please review this situation and get back to me at your earliest convenience. I would like to clean up this matter with Essroc by the end of June so that I can begin dealing with the other creditors. I would rather settle out our mutual claims against each other prior to doing that. In the meantime, if you have any questions or comments,

please do not hesitate to give me a call.

Essroc's TRO Br. at 4 ¶ 21 and Ex F (Letter of Defense counsel Jackson to Essroc's counsel) at 4-5.

Essroc alleges that since the June 16, 2008 letter, CP's counsel has not communicated further regarding the status of the escrowed funds. TRO Br at 4 ¶ 22. Essroc's TRO brief does not specify whether Essroc's counsel contacted CP's counsel in response to CP's letter of June 16, 2008.

Essroc argues that "because Defendants have threatened to dissolve their business operations, or because the threat remains that Defendants may wrongfully divert or move the funds, Essroc is seeking to freeze the funds" which CP states are in its counsel's client trust account. Essroc reasons that issuing a TRO and PI will not substantially injure the defendants because they have already acknowledged that the funds will remain escrowed in counsel's client trust account until a court determines the rightful owner of the funds. TRO Br at 5 ¶¶ 23-24.

In addition to opposing PI relief, CP disputed two of the premises on which Essroc relies in its TRO brief. First, as a factual matter, CP stated that Essroc is mistaken in its belief that CP has escrowed *any* funds in defense counsel's trust account in relation to this dispute:

> The clear meaning of [defense counsel]'s [February 26, 2008] letter was that no funds had been escrowed and that none would be until, at a minimum, further discussions were had with Essroc and a quantification made of Defendants' damages. And despite some further discussions with Essroc, the fact is that the required quantification has not yet been made. Indeed, quantification of Defendants' damages will not be Am Completed until resolution by this Court of counterclaims that Defendants will be asserting in this case.

CP's Opp to TRO at 2; *see also* CP's Opp, Ex A, Jackson Aff ¶ 5. Second, as a legal matter, CP contended that if it were going to escrow funds to pay for damages which the court might ultimately award in Essroc's favor, the amount would be nowhere near as large as Essroc hoped:

> The amount that Essroc asserts should be escrowed – $418,823.76 – is Am Completely off-base. As [defense counsel] plainly stated in his February 26, 2008

letter, the amount that Defendants planned to escrow was to be "all Gross Receipts collected by [CP Recycling], *less the commission and expenses* provided for in the Agreement . . . ." The $418,823.76 amount that Essroc asserts simply represents the entire gross receipts, without subtracting from that amount the monthly commission fee and expenses due to Defendant CPRIN, Inc. under the parties' agreement. Therefore, even if an amount of money were to be ordered escrowed by the Court, determining the proper amount – in the absence of a stipulation by the parties – would require an evidentiary hearing and factual finding by this Court. Essroc has not even submitted any affidavit or documentary evidence on this motion to establish the proper amount.

CP's Opp at 3 (record citation omitted); *see also* CP Opp, Ex A (Jackson Aff) ¶¶ 1-3.


## LEGAL STANDARD:  DISMISSAL FOR FAILURE TO STATE A CLAIM

This court assesses a Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief can be granted under the same standard as a Rule 12(c) motion for judgment on the pleadings. *Griffin v. Reznick*, 2008 WL 4741738, *2 (W.D. Mich. Oct. 28, 2008) (Maloney, C.J.) (citing, *inter alia*, *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007)).

Such motions turn on legal issues, not an assessment of the evidence. *Griffin*, 2008 WL 4741738 at *2 (citing *Technology Recycling Corp. v. City of Taylor*, 186 F. App'x 624, 640 n.5 (6th Cir. 2006) (Griffin, J.) ("*Tech Rec*") and *Thomas v. Arn*, 474 U.S. 140, 150 n.8 (1985) ("[M]otions for judgment on the pleadings and dismissal for failure to state a claim on which relief can be granted . . . consist exclusively of issues of law.")).  A Rule 12(b)(6) or 12(c) motion is simply one permissible avenue for contending that the complaint should be dismissed because it fails to state a claim on which relief can be granted.  *See Griffin*, 2008 WL 4741738 at *2 (citing *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 507 (2006) (quoting FED. R. CIV. P. 12(h)(6))).

"Such motions 'presume as a legal matter the lack of any need for an evidentiary hearing . . . .'"  *Griffin*, 2008 WL 4741738 at *3 (citing *US v. Raddatz*, 447 U.S. 667, 693-94 (1980)).  The

-14-

court must accept all of the complaint's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Tech Rec*, 186 F. App'x at 640 n.5 (citing *PONI v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005)); *see also Bohanan v. Bridgestone/Firestone No. Am. Tire, LLC*, 260 F. App'x 905, 906 (6th Cir. 2008) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)); *Heggie v. Kuzma*, 2009 WL 594908, *9 (W.D. Mich. Mar. 6, 2009) (Maloney, C.J.) ("the court must accept as true all Plaintiff's allegations and construe the complaint liberally in his favor") (citing *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000)). But the court need not draw unwarranted factual inferences or accept the plaintiff's *legal* conclusions. *Bohanan*, 260 F. App'x at 906 (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)).

And each claim's factual allegations must *plausibly* suggest a viable claim; the claim must be plausible and not merely conceivable. *Griffin*, 2008 WL 4741738 at *3 (citing *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 455 (6th Cir. 2007) (en banc) (Sutton, J., joined by Griffin et al.) (citing *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, –, 127 S.Ct. 1955, 1974 (2007))). "The 'factual allegations must be enough to raise a right to relief above the speculative level'", not merely create a "'*suspicion* of a legally cognizable cause of action . . . .'" *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Twombley*, 550 U.S. at –, 127 S.Ct. at 1974) (internal alterations omitted)).[5] There must be either direct of inferential allegations regarding all the material

---

[5]

Until 2007, our Circuit followed the standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which directed courts to grant a 12(b)(6) motion "when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Taylor v. Sampson*, 2008 WL 2923435, *2 n.3 (W.D. Mich. July 25, 2008) (Maloney, J.).

In *Twombley* (2007), the Court "retired the 'no set of facts' formulation of the Rule 12(b)(6) standard and dismissed a . . . complaint because it did not contain facts sufficient to 'state a claim to relief that is plausible on its face.'" *Griffin*, 2008 WL 4741738 at *3 n.1 (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 337 n.4 (6th Cir. 2007) (quoting *Twombley*, 550

elements of each claim. *LULAC v. Bredesen*, 500 F.2d 523, 527 (6th Cir. 2007) (McKeague, J.) (citing *Twombley*, 550 U.S. at –, 127 S.Ct. at 1969).

Our Circuit cautions that district courts should not overstate the hurdle that *Twombley* establishes for plaintiffs to survive a Rule 12(b)(6) or Rule 12(c) motion:

> In *Erickson v. Pardus*, 550 U.S. [89], 127 S.Ct. 2197 . . . (2007) [(p.c.)], decided two weeks after *Twombley*, however, the Supreme Court affirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 2200 (quoting *Twombley*, 127 S.Ct. at 1964). The opinion in *Erickson* reiterated that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Id.* (citing *Twombley*, 127 S.Ct. at 1965). We read the *Twombley* and *Erickson* decisions in conjunction with one another when reviewing a district court's decision to grant a motion to dismiss for failure to state a claim or a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12.

*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 550 (6th Cir. 2008) (Griffin, J.) (quoting *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008) (footnote omitted)) (other internal quotation marks and alterations omitted). Nonetheless, "[w]hile a complaint need not contain detailed allegations, [it] must include more than mere labels and conclusions." *Petros v. Sampson*, 2009 WL 2761425, *2 (W.D. Mich. Feb. 4, 2009) (Edgar, J.) (citing, *inter alia*, *Twombley*, 550 U.S. at –, 127 S.Ct. at 1965).

When considering whether to grant a Rule 12(c) or 12(b)(6) motion, the court primarily considers the complaint's allegations, but may also take into account items appearing in the record and attached exhibits. *Poly-Flex Const., Inc. v. NTH, Ltd.*, 582 F. Supp. 892, 901 (W.D. Mich.

---

U.S. at –, 127 S.Ct. at 1974)). *See also Casden v. Burns*, 306 F. App'x 966, – n.5 (6th Cir. 2009).

"In some cases, *Twombley* may make it easier . . . to grant 12(b)(6) than the *Conley* standard." *Taylor*, 2008 WL 2923435 at *2 n.3.

2008) (Maloney, C.J.) (citing, *inter alia*, *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)).

When sitting in diversity jurisdiction, this court must apply the choice-of-law rules and, if applicable, the substantive law of the forum State, Michigan. *Amerisure Mut. Ins. Co. v. Carey Transp., Inc.*, 578 F. Supp.2d 888, 897 (W.D. Mich. 2008) (Maloney, C.J.) (citing *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409-10 (6th Cir. 2008) (citing *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003))); *see also Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("We generally apply the substantive law of the forum state to actions brought pursuant to our diversity jurisdiction.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

This rule applies in insurance-coverage actions brought in diversity. *See Amerisure*, 578 F. Supp.2d at 897 (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008) (citing *Talley v. State Farm Cas. & Fire Co.*, 223 F.3d 323, 326 (6th Cir. 2000))).

When interpreting contracts in a diversity action, the federal courts also generally enforce the parties' contractual choice of governing law. *Amerisure*, 578 F. Supp.2d at 897 (citing *Savedoff*, 524 F.3d at 762 (citing *Carnival Cruise Lines, Inc. v. Schute*, 499 U.S. 585, 596 (1991) and *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972))). As the parties agree that Essroc's claims against these defendants is governed by Michigan substantive law, the court applies Michigan law to this dispute. *See, e.g., Savedoff*, 524 f.3d at 762 ("As the parties do not dispute that the student loan contracts at issue are governed by Ohio law, we apply Ohio law to the parties' contractual dispute."); *Lakeland Reg. Health Sys. v. Walgreen's Health Initiatives, Inc.*, 604 F. Supp.2d 983, 986 (W.D. Mich. 2009) (Maloney, C.J.) (although the contract at issue had a choice-of-law clause calling for the application of Illinois substantive law, "WHI contends that Michigan law governs the tort

issues in this case . . . and plaintiff Lakeland's brief also proceeds under Michigan law. Accordingly, the court will apply Michigan law to the determination of whether Lakeland has a cognizable tort cause of action against WHI."); *State Farm Fire & Cas. Co. v. Liberty Ins. Underwriters, Inc.*, 2009 WL 702863, *4 (W.D. Mich. Mar. 16, 2009) (Maloney, C.J.) ("As the parties do not dispute that the interpretation of the policies is governed by Michigan substantive law, the court applies Michigan law to this dispute."); *Amerisure*, 578 F. Supp.2d at 897 ("As the parties do not dispute that the . . . policy is governed by Michigan substantive law, the court applies Michigan law to this dispute.").

## A FEDERAL COURT'S APPLICATION OF STATE LAW

"'In applying state law, we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court.'" *Appalachian Railcar Servs. v. Boatright Enters., Inc.*, 602 F. Supp.2d 829, –, 2008 WL 828112, *14 (W.D. Mich. 2008) (Maloney, J.) ("*ARS*") (quoting *NUFIC of Pittsburgh v. Alticor, Inc.*, 472 F.3d 436, 438 (6th Cir. 2007) (Richard Allen Griffin, J.) (citation omitted)). If the state supreme court has not conclusively decided the issue, a federal court presumptively looks to the decisions of the state's appellate courts: "In anticipating how the state supreme court would rule, 'we look to the decisions of the state's intermediate courts unless we are convinced that the state supreme court would decide the issue differently.'" *ARS*, 602 F. Supp.2d at *14 (citing *US v. Lancaster*, 501 F.3d 673, 679 n.3 (6th Cir. 2007) (Griffin, J.) (citation omitted)); *see also West v. AT&T Co.*, 311 U.S. 223, 236-37 (1940) ("A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of

the state although the highest court of the state has never passed upon them. In those circumstances the federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court . . . ."), *followed by Mroz v. Lee*, 5 F.3d 1016, 1019 (6th Cir. 1993) and *Dairy, Bakery & Food Workers Local Union No. 386 v. Grand Rapids Milk Div. of Nat'l Dairy Prods. Corp.*, 160 F. Supp. 34, 39 (W.D. Mich. 1958) (Kent, J.).

In determining the controlling law of the State, a federal court also "*may* give weight" to the decisions of a State trial court, *Lakeland Reg. Health Sys. v. Walgreens Health Initiatives, Inc.*, 604 F. Supp.2d 983, 989 (W.D. Mich. 2009) (Maloney, C.J.) (citing *Bradley v. GMC*, 512 F.2d 602, 605 (6th Cir. 1975)), especially when it is consistent with state appellate decisions, *Bradley*, 512 F.2d at 605. But the federal court is not *obligated* to follow state trial-court decisions. *Am. Int'l Ins. Co. of P.R. v. Lampe GmbH*, 307 F. App'x 645, 647 (3d Cir. 2009) (citing *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 199 (3d Cir. 2004)).

## PRECEDENTIAL VALUE OF MICHIGAN DECISIONS

A federal court must accord the same precedential value to a state-court decision as it would be accorded by that state's courts. *See ARS*, 602 F. Supp.2d at *14 (citing *Mutuelle Generale Francaise Vie v. Life Ass. Co. of Pa.*, 688 F. Supp. 386, 397 n.15 (N.D. Ill. 1988) ("[O]ne Supreme Court decision (*Fidelity Union Trust Co. v. Field*, 311 U.S. 169 . . . (1940)) . . . required a federal court to ascribe the same precedential force to a New Jersey trial court decision that such a decision would receive in that state's court system under the peculiarities of New Jersey law.")). If a state court would not be bound by a particular state-court decision, then neither is this court. *ARS*, 602 F. Supp.2d at *14 (citing *King v. Order of United Commercial Travelers of America*, 333 U.S. 153,

161 (1948) ("a federal court adjudicating a matter of state law in a diversity suit is, in effect, only another court of the State; it would be incongruous indeed to hold the federal court bound by a decision which would not be binding on any state court.") (citation omitted)).

Michigan Court Rule 7.215(C)(2) states that "[a] published decision of the Court of Appeals has precedential value under the rule of stare decisis." This subsection makes no distinction based on when the decision was issued.. *ARS*, 602 F. Supp.2d at *14.

However, Michigan Court Rule 7.215(J)(1) provides that "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals *issued on or after November 1, 1990*, that has not been reversed or modified by the Supreme Court or by a Special Panel of the Court of Appeals as provided in this rule." *ARS*, 602 F. Supp.2d at *14 (emphasis added).

Synthesizing Michigan Court Rules 7.215(C)(2) and 7.215(J)(1), the Michigan Court of Appeals accords precedential value to *all* of its prior published decisions, regardless of when they were issued. *ARS*, 602 F. Supp.2d at –. When a post-November 1, 1990 published Court of Appeals decision conflicts with a *pre*-November 1, 1990 published Court of Appeals decision, however, the *post*-November 1, 1990 decision prevails. *Id.*

When there is a conflict between two published decisions of the Court of Appeals that were *both* issued *after* November 1, 1990, Michigan courts must follow the first opinion that addressed the matter at issue. *ARS*, 602 F. Supp.2d at – (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W. 2d 546, 554 (Mich. App. 1999) (citation omitted)).

By contrast, Michigan Court of Appeals panels are not bound by *un*published decisions of that same court, regardless of when they were issued. *ARS*, 602 F. Supp.2d at – (citing *Iqbal v.*

*Bristol West Ins. Group*, 748 N.W.2d 574, 582 n.5 (Mich. App. 2008) (citing MICH. CT. R. 7.215(J)(1))).  Nonetheless, this court may consider and follow unpublished state-court decisions, so long as they do not contradict published decisions of the Michigan Supreme Court or Michigan Court of Appeals.  *See Republic-Franklin Ins. Co. v. Bosse*, No. 95-3401, 89 F.3d 835, 1996 WL 301722, *5 n.4 (6ᵗʰ Cir. June 4, 1996) (although unpublished decisions are not generally controlling under Ohio law, "[w]e cite them, nevertheless, due to our sensitivity to state law in deciding diversity cases.") (citing *Royal Indem. Co.*, 364 F.2d at 154 ("Although we are not bound in a diversity case by an unreported decision of a State court of original jurisdiction, we may give weight to this [unreported] decision of the chancery [court] in determining what is the controlling [state] law.")).

Finally, a federal court's interpretation of state law is not binding.  *ARS*, 602 F. Supp.2d at – (citing *Leavitt v. Jane L.*, 518 U.S. 137, 146 (1996) (Stevens, J., dissenting o.g., joined by Souter, Ginsburg, & Breyer, JJ.) ("[T]he decision of a federal court (even this Court) on a question of state law is not binding on state tribunals . . . .")); *accord McGrath v. Toys 'R Us, Inc.*, 356 F.3d 246, 250 (2d Cir. 2004) (citing *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996)); 20 AM. JUR.2D COURTS § 225 (1965).  As our Circuit recently emphasized,

> No federal court has the final say on what [state] law means.  Even the decision of the highest federal court, the United States Supreme Court, about the meaning of [a state] law has no more binding authority on the [state] Supreme Court than the decision of [another State's] Supreme Court or for that matter any other court.

*Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 472 (6ᵗʰ Cir. 2008).

Accordingly, this court will seriously consider our Circuit's interpretation of state law, or another district court's interpretation of state law, but is not bound by it.  *See ARS*, 602 F. Supp.2d at –; *see also Pack v. Damon Corp.*, 2006 WL 1156489, *1 (E.D. Mich. May 1, 2006) ("Michigan

courts, in turn, are not bound by the Sixth Circuit's interpretation of Michigan law."). *See, e.g., MPAS v. Michigan DOC*, 581 F. Supp.2d 847, 856 (W.D. Mich. 2008) (Maloney, C.J.) (declining to follow U.S. District Court for the Eastern District of Michigan's determination that MDOC is a political subdivision of the State of Michigan, a matter of state law).

### DISCUSSION:  Count 9, Promissory Estoppel against Jackson & Warner Norcross

**In Count 9, Promissory Estoppel, Essroc notes** that on February 26, 2008, twelve days after Essroc terminated its agreement with CP, defendant Paul R. Jackson, then counsel for CP and the Knowlsons, "sent correspondence to Essroc indicating that the accounts receivable at issue in this matter would be placed into escrow, pending the resolution of the dispute."  Am Comp ¶¶ 113-114 and Ex E (Jackson's 2/26/2008 letter to Essroc).  Essroc clarifies, however, that Jackson's letter merely "*implicitly* promised . . . that the funds at issue would be escrowed pending resolution of the matter."  Am Comp ¶ 115 (emphasis added).  Essroc reasons that Jackson/Warner knew or should have known that Essroc would rely on the promise to escrow funds and, because of that reliance, would refrain from taking more aggressive or active steps to secure the amount it believes it is owed:

> Because of the representation, Essroc did not immediately move for seizure of the accounts receivable, believing that if the moneys were placed into escrow, that on resolution of the dispute they would be retrievable without problem.  * * * Essroc detrimentally relied upon Defendant . ..  Making the representation that the funds would be escrowed.  Had Defendant . . . not made the representation that the accounts receivable were escrowed, Essroc would have initiated proceedings to recoup those accounts receivable at an earlier date.

Am Comp ¶¶ 118 and 120-21.  More than three months later, on June 16, 2008, defendant Jackson sent a letter to Essroc indicating that CPRIN was insolvent and had assets of only $31,000, *see* Am Comp ¶ 119, and Essroc fears that the funds that were supposed to be escrowed "have been

dispersed [sic, disbursed] and may not be available for recovery", Am Comp ¶ 122.

The court determines that Essroc's promissory estoppel claim lacks merit. First, as Warner correctly notes, Jackson's February 2008 letter did not make any unequivocal promise to escrow funds. He merely communicated his clients' *offer* to escrow "gross receipts collected . . . less the commissions and expenses provided for in the agreement . . . ." Ex E. The amount potentially to be escrowed was subject to at least three variables: (1) the amount of payments actually received (which the parties could not have known at that time), (2) the commissions owed under the agreement (which apparently was and remains in dispute), and (3) the amount of expenses payable under the agreement (which apparently was and remains in dispute). *See* Document No. 38, Motion to Dismiss the Amended Complaint for Failure to State a Claim, filed by Defendants Paul R. Jackson, Esq., and Warner Norcross & Judd LLP on March 23, 2009 ("Warner's MTD") at 3. Moreover, Essroc's counsel responded by a March 10, 2008 letter which cannot reasonably be construed as accepting Jackson's offer to escrow ("Essroc's March 2008 letter"). Essroc's March 2008 letter informed Jackson that his analysis was based on the wrong contract and demanded that Jackson's clients "immediately forward to Essroc all Gross Receipts collected to date, *without deduction, as well as any and all future Gross Receipts received*." Doc 24, Ex H (March 10, 2008 letter of John Metzger, Esq., to Paul Jackson, Esq.). Jackson reasonably portrays Essroc's March 2008 letter as a rejection of his escrow offer and the premises on which it rested, and the court finds that Essroc's March 2008 letter also constitutes a counter-offer.

**Under Michigan common law, promissory estoppel requires these elements:** (1) a promise (2) which the promisor should reasonably have expected to induce action of a definite and substantial nature on the part of the promisee and (3) which in fact produced reliance or forbearance

of that nature in circumstances such that the promise must be enforced if injustice is to be avoided. *Langer v. Oak Park Bd. of Ed.*, 2009 WL 1068885, *6 (Mich. App. Apr. 21, 2009) (p.c.) (P.J. Beckering, Talbot, Donofrio) (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552 (Mich. App. 1999) (P.J. MacKenzie, Gribbs, Wilder) (citing *Marrero v. McDonnell Douglas Capital Corp.*, 505 N.W.2d 275, 278 (Mich. App. 1993)), *app. dismissed*, 611 N.W.2d 799 (Mich. 2000)). Michigan courts "are to exercise caution in evaluating an estoppel claim and should apply the doctrine only where the facts are unquestionable and the wrong to be prevented undoubted." *Novak*, 599 N.W.2d at 552 (citing *Marrero*, 505 N.W.2d at 278).

**On this record, Essroc cannot establish *any* of the elements of promissory estoppel under Michigan law. First, a promissory estoppel cause of action requires proof of an "actual, clear, and definite" promise.** *See First Security Savings Bank v. Aitken*, 573 N.W.2d 307, 313 (Mich. App. 1997); *see also Schmidt v. Bretzlaff*, 528 N.W.2d 760 (Mich. App. 1995); *Marrero*, 505 N.W.2d at 552. Jackson's February 2008 made no such definite and clear promise; as discussed above, it merely suggested a possible way forward and made an offer. Essroc's own characterization of Jackson's February 2008 letter as making an "implicit" promise (Am Comp ¶ 117) confirms this point, because courts customarily draw a sharp distinction between "implicit" and "definite" or "clear." *See Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25, 38 (1996) ("'Specifically' can mean 'explicitly, particularly, [or] definitely', BLACK'S LAW DICTIONARY 1398 (6th ed. 1990), thereby contrasting a *specific* reference with an *implicit* reference . . . .") (emphasis in original); *Joyce v. Nicholson*, 19 Vet. App. 36, 50-51 (adopting WEBSTER'S NEW WORLD DICTIONARY 479 (3d College Ed. 1988)'s definition of "explicit" as "clearly stated and leaving nothing implied; distinctly expressed; definite; distinguished from implicit"), *recon. dis.*, 2005 WL 894901 (Apr. 5,

2005), *recon. denied*, 19 Vet. App. 514 (Vet. App. 2005); *Vermont Right to Life Committee, Inc. v. Sorrell*, 221 F.3d 376, 388 n.2 (2d Cir. 2000) ("'Anything is implicit which is implied *without being stated*.'") (quoting Evans, A DICTIONARY OF CONTEMPORARY AMERICAN USAGE 115 (1957)). Absent any contrary interpretation of "implicit" in Michigan case law, the court finds it likely that the Michigan Supreme Court would adopt this unsurprising definition of "implicit", leading Essroc's characterization of Jackson's promise as "implicit" to undermine Essroc's own argument on the first element of promissory estoppel.

**Furthermore, Jackson's February 2008 letter did not make any "promise" at all, whether "clear and definite" or otherwise.** A promise is " a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *First Security Savings Bank v. Aitken*, 573 N.W.2d 307, 312-13 (Mich. App. 1997) (citing *State Bank of Standish v. Curry*, 500 N.W.2d 104 (Mich. 1993) (adopting definition of "promise" from RESTATEMENT OF CONTRACTS 2d § 2 at 8)). Jackson did not express an intent to place the funds into escrow, only a likely willingness to do so if and when certain conditions were met and certain information became available.

**Second, given the conditional nature of Jackson's February 2008 offer (not even a "promise"), Jackson should <u>not</u> have reasonably expected that his mere offer would induce action "of a definite and substantial nature" by Essroc,** *see Novak*, 599 N.W.2d at 552 – such as refraining from initiating a lawsuit designed to establish Essroc's legal right to the funds and secure those funds – until and unless Essroc accepted the offer. The record contains no evidence that Essroc ever accepted Jackson's offer.

**The third element of Michigan promissory estoppel is also lacking.** It certainly was not

reasonable for Essroc to forgo legal action – or do anything else substantial – in reliance on Jackson's February 2008 letter, so there is no "injustice . . . to be avoided", *Novak*, 599 N.W.2d at 552, by enforcing the alleged promise in that letter. By itself, the conditional nature of any arguable promise in the letter renders reliance unreasonable. *See Kennedy v. Wm. R. Hudon, Inc.*, 659 F. Supp. 900 (D. Colo. 1987) (**under Colorado law**, it was unreasonable for plaintiff to rely on one Howard's alleged written promise to escrow funds; plaintiff, "an experienced underwriting agent with at least some degree of sophistication in matters relating to business agreements and escrow accounts * * * knew that manifest assent from [Howard's partner] Hudon to escrow the fees was necessary" and that such assent had not been obtained); *Neshaminy Constructors, Inc. v. Concrete Bldg. Sys., Inc.*, 2007 WL 2728870, *16 (E.D. Pa. Sept. 18, 2007) (under Pennsylvania law, "plaintiff's alleged reliance on defendant's original offer was not reasonable given the contingent nature of the offer. Plaintiff proceeded with the SEPTA project while ignoring the preconditions explicitly set forth in defendant's Proposal.") (citing *Green v. Interstate United Mgmt. Servs. Corp.*, 784 F.2d 827, 830 (3d Cir. 1984)); *Allen v. Ford Motor Co.*, 8 F. Supp.2d 702 (N.D. Ohio 1998) (under Ohio law, prospective purchaser of automobile dealership did not state claim for promissory estoppel; it was unreasonable for him to rely on terms of purchase agreement and oral representations of motor-vehicle company officials that he would become the owner, because the offer explicitly required the signature of a company officer and that signature was never obtained), *aff'd*, No. 98-3807, 188 F.3d 506, 1999 WL 644345 (6th Cir. Aug. 18, 1999) (Jones, Siler, Gilman).[6][7]

---

[6]

*Accord Glass v. Kemper Corp.*, 133 F.3d 999, 1004 (7th Cir. 1998) (Richard Posner, C.J.) (**under Illinois law**, it was unreasonable for employee to rely on employer's promise to pay closing costs on his house sale; the alleged promise was contained in offer that came with express caveat that approval of board of directors was required, and it was implicitly contingent upon negotiation of final contract) (citations to Illinois and 7th Circuit decisions omitted);

Just as significant, Essroc *expressly rejected* Jackson's offer and made a counter-offer. Absent Michigan precedent to the contrary, the court finds it likely that the Michigan Supreme Court would hold it *per se* unreasonable to rely on an offer after one has conveyed rejection of that offer.

**Likewise, the fourth element of Michigan promissory estoppel is absent.** Essroc cannot show any harm or loss which it has suffered due to its alleged reliance on Jackson's offer in the February 2008 letter. Even if Essroc did delay filing the instant action because it was (unreasonably) relying on Jackson's conditional offer to escrow funds, that merely delayed, by at most seven months, this court's ruling on its TRO / PI application. The court held that Essroc had not shown any likelihood of success on the merits of its claims against the CP defendants, and nothing in the case since that time (November 2008) has altered that conclusion. A delay in bringing claims which have not been shown to be meritorious cannot constitute harm or injustice for the purposes of the promissory estoppel doctrine.

As to the claims against Jackson/Warner (counts nine and ten), any reliance-induced delay in asserting those claims cannot constitute legally cognizable harm. "Depriving someone of a frivolous claim deprives him of nothing at all . . . ." *Figel v. Riley*, 2007 WL 1796237, *4 (W.D. Mich. June 20, 2007) (Quist, J.) and *Crump v. Darling*, 2007 WL 851750, *8 (W.D. Mich. Mar. 21,

---

*In re Daisy Sys. Corp.*, 97 F.3d 1171, 1180-81 (9th Cir. 1996) **(applying California law** and affirming SJ for defendant banker on negligent-misrepresentation claim) ("because the letters were conditioned upon 'satisfaction of all the conditions set forth in the offer to Purchase,' any reliance upon them as being indicative of a general availability of financing clearly was unreasonable.").

7

*Cf. Bowman v. Gruel Mills Nims & Pylman, LLP*, 2007 WL 1203580, *10 (W.D. Mich. Apr. 24, 2007) (Bell, C.J.) (under federal common law, plaintiff failed to state a claim for promissory estoppel, as "it would have been unreasonable and unjustifiable for [plaintiff] to rely on any representations made by" co-owner of company; "[a]s a member of the committee who approved the SERP [employee benefit plan], [plaintiff] knew, or should have known that only the Administrative Committee of the SERP had authority to determine benefits.").

2007) (Bell, C.J.) (both quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996))).

In any event, as Warner points out, *see* Warner's MTD at 14, before Essroc even filed the amended complaint adding claims against Jackson/Warner, the CP defendants had already deposited nearly $250,000 into an interest-bearing escrow account pursuant to a joint stipulation drafted by Essroc itself.  Any reliance-induced delay in instituting this action, or in amending the complaint, cannot harm or prejudice Essroc in any legally cognizable way when the disputed funds are sitting in escrow, ready to be disbursed if the court ultimately concludes that they are owed to Essroc.

**Finally, Warner/Jackson correctly contends that under Michigan law, an agent may not be held personally liable for statements made on behalf of a disclosed principal unless he consents to such liability.**  *See Spears v. Ceriotti*, 2005 WL 3077150, *5 (Mich. App. Nov. 17, 2005) (p.c.) (P.J. Davis, Fitzgerald, Cooper) ("[E]ven if Watson acted as Kimberly's agent when he made the representations, his actions did not make him personally liable with respect to the sales contract. An agent may work on behalf of a principal within the scope of the agency agreement as if the agent had stepped into the shoes of the principal without incurring any personal liability.") (citing *Uniprop, Inc. v. Morganroth*, 678 N.W.2d 638 (Mich. App. 2004)); *see also PM One, Ltd. v. Dep't of Treasury*, 611 N.W.2d 318, 324 (Mich. App. 2000 (citing *Brusslan v. Larsen*, 150 N.W.2d 525 (Mich. App. 1967)).

It is the agent's duty to disclose his principal's identity in order to avoid potential personal liability, rather than merely relying on the fact that the other party has the means of ascertaining the principal's identity, *Detroit Pure Milk Co. v. Patterson*, 360 N.W.2d 221, 226 (Mich. App. 1984) (citing *Harmon v. Parker*, 160 N.W. 380 (Mich. 1916) and *Stevens v. Graf*, 99 N.W.2d 356 (Mich.

1959)), but there is no allegation that Essroc did not actually know that Jackson wrote the February 2008 letter and all subsequent communications solely on behalf of CP / Knowlson and not on his own behalf. On the contrary, Jackson's February 26, 2008 letter to Essroc begins by stating, "*We represent CP Recycling, Inc., a Michigan corporation, and its affiliates, including CPRIN, Inc.*, a Michigan corporation. . . . Essroc and CP Recycling are parties to the above-referenced agreement which was wrongfully terminated by your client . . . ." P Essroc's Opp, Ex. A at 1 (emphasis added).

Finally, an agent may be held personally liable when he acts only on his own behalf rather than on behalf of the principal, *Behm v. Cross*, 2005 WL 1685102, *4 (Mich. App. July 19, 2005) (p.c.) (P.J. Bandstra, Fitzgerald, Meter) (citing *Baranowski v. Strating*, 250 N.W.2d 744 (Mich. App. 1976)), *app. denied*, 715 N.W.2d 871 (Mich. 2006),[8] but again, there is no allegation, let alone evidence, that Jackson was acting on his own behalf rather than on behalf of CP / Knowlson when he wrote the February 2008 letter. Essroc does nothing to undermine this reasoning whatsoever. Without citing a *single* Michigan decision – or even a federal-court decision applying Michigan law – the entirety of Essroc's "argument" on this issue consists of the following conclusory assertions and a throw-away reference to *Twombley*'s statement of the 12(b)(6) standard:

> While counsel for Warner / Mr. Jackson is correct that generally speaking an agent cannot be held liable for the failure of a disclosed principal to perform, that is the general rule, and it is inapposite in the instant case. Here, the conduct of Warner in making the assertion on behalf of the principal, combined with the subsequent representations by Mr. Moore once the promise had been made, and further once the agreement had been made to secure a portion of the disputed funds, rises to a level whereby Warner is, and should be bound by its representations to Essroc.

---

[8]

*Cf. Kaminskas v. Litnianski*, 214 N.W.2d 331, 334 (Mich. App. 1973) ("'It is well settled that where an agent undertakes to contract on behalf of another, and contracts in a manner which is not binding on his principal, he will be personally responsible, as he is presumed to know the exact extent of his authority.'") (quoting *Newberry v. Slafter*, 57 N.W. 574, 575 (Mich. 1894)).

-29-

> Essroc is not required to plead a "heightened fact pleading of specifics, but only enough facts to state a claim that is plausible on its face." *Twombley*[, 127 S.Ct.] at 1974. Essroc has sufficiently pled a claim of promissory estoppel, and as such, Warner/Jackson's motion to Dismiss Pursuant to Rule 12(b)(6) as to Count IX fails.

P's Opp at 9 (¶ break added). This utterly conclusory statement, unsupported by binding or persuasive authority, provides no basis for the court to conclude that Essroc has stated a claim for promissory estoppel on which relief can be granted *under Michigan law*. When adjudicating an issue of state law, this court is obligated to discern how the Michigan Supreme Court has ruled, or if necessary predict how it likely *would* rule. *ARS v. Boatright Enters., Inc.*, 602 F. Supp.2d 829, 846 (W.D. Mich. 2008) (Maloney, C.J.) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh v. Alticor, Inc.*, 472 F.3d 436, 438 (6th Cir. 2007) (Griffin, J.)).

Essroc provides no basis for this court to conclude that the Michigan Supreme Court would recognize this novel "exception" to the venerable and oft-applied rule that an agent is not personally liable for actions undertaken within the scope of his agency for a disclosed or known principal. This court has "'no authority in a diversity case such as this to apply anything other than Michigan law, or to alter that law to apply to the facts of the case before us.'" *Ellis v. Kaye-Kibbey*, 581 F. Supp.2d 861, 881 n.16 (W.D. Mich. 2008) (quoting *Philips v. Cabot Med.*, No. 98-1812, 201 F.3d 441, 1999 WL 1204796, * (6th Cir. Dec. 7, 1999) (p.c.) (Boggs, Daughtrey, D.J. Joseph McKinley)). *See, e.g., Aslani v. Sparrow Health Sys.*, 2009 WL 736654, *16 n.24, – F. Supp.2d –, – n.24 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.) ("Greyhound also cites *Booker* . . . (6th Cir. 2003). * * * The court disregards *Booker v. GTE* because that panel was applying *Kentucky* law, not Michigan law. When ruling on a state-law claim, this court is obligated to predict how the Michigan Supreme Court would rule. Greyhound has not identified any Michigan decisions which cite *Booker* with approval on this score.") (citations omitted).

For these reasons, even if Essroc could establish the elements of promissory estoppel at Michigan common law, Jackson and his law firm cannot be held liable under that doctrine because they were acting within the scope of their agency for their clients and Essroc knew they were. *See Riddle v. Lacey & Jones*, 351 N.W.2d 916, (Mich. App. 1984) (affirming SJ for defendant law firm against claim of promissory estoppel because "[a]ny promise made by defendant was clearly made on behalf of his principal, U.S. Truck."), *app. denied* (Mich. Jan. 30, 1985) (no citation available).

## DISCUSSION:  Count 10, Fraudulent Misrepresentation

**In count ten, Fraudulent Misrepresentation, Essroc** alleges that when Jackson stated in February 2008 that the accounts receivable at issue would be placed into escrow pending resolution of the dispute, he knew or should have known that those funds were not being escrowed.  Am Comp ¶¶ 126-27.  In so doing, Essroc claims, Jackson/Warner committed the torts of intentional and/or reckless misrepresentation, with the intention that Essroc rely on his representation, *see* Am Comp ¶¶ 130-33, and Essroc did rely on it, suffering substantial economic losses as a result, *id.* ¶¶ 134-35.

As the Michigan Court of Appeals recently explained,

> Actionable common-law fraud requires proof that "(1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance on it; and (6) the plaintiff suffered damage." *M & D, Inc. v. McConkey*, . . . 585 N.W.2d 33 ([Mich. App.] 1998) (citations omitted).

> Further, an action for fraud must be predicated upon a false statement relating to a past or an existing fact; promises regarding the future are contractual and will not support a claim of fraud. *Hi-Way Motor Co. v. International Harvester Co[.]*, . . . 247 N.W.2d 813 ([Mich.] 1976).

> Further, to establish a claim of fraudulent misrepresentation requires that the plaintiff

*reasonably* rely on the false representation. *Nieves v. Bell Industries, Inc.*, . . . 517 N.W.2d 235 ([Mich. App.] 1994). "There can be no fraud where the person has the means to determine that a representation is not true." *Id.*

*Cummins v. Robinson Twp.*, – N.W.2d –, –, 2009 WL 1363409, *___ (Mich. App. May 12, 2009)

(p.c.) (P.J. Murray, Markey, Wilder) (emphasis added, ¶ breaks added).

After reciting the elements of fraudulent misrepresentation at Michigan common law, Essroc

argues as follows:

> The facts indicate that Warner made a material misrepresentation in February 2008 that disputed funds would be escrowed. Warner did not escrow the funds in its law firm account, [so] it was a false representation. Warner knew, or should have known that Essroc would rely on such a statement by a reputable law firm, or if they did not know, then such statements were recklessly made. Warner knew or should have known that such statements of "escrowing funds" in their law firm account would result in Essroc not taking immediate legal action to secure their rights. Essroc rightfully and reasonably relied in [sic] the February 2008 statements as to escrow, and now may be damaged irreparably if there are no assets to collect against CP because funds were not escrowed.

> It is true that generally speaking, "an action for fraudulent misrepresentation must be predicated upon a statement to a past or existing fact. Future promises are contractual and do not constitute fraud." Hi-Way Motor Co. v. Int'l Harvester Co., 398 Mich[.] 336; 247 N.W.2d 813 (1976). However, that case goes on to state the well-known recognized exception to the general rule that "A fraudulent misrepresentation may be based upon a promise made in bad faith without intention of performance." Id. at 337-338, 247 N.W.2d 813. Based upon the representations of Mr. Moore [another attorney at Warner Norcross & Judd LLP], the facts indicate that there was never an intention to secure the disputed funds, and in fact the funds placed into escrow were not the disputed funds, in direct contravention of the representations made by Mr. Jackson in his letter of February, 2008.

> The representations of Mr. Moore are sufficiently proximate in time to satisfy the proximity requirements set forth by the Michigan Supreme court in Danto v. Charles C. Robbins, Inc., 250 Mich. 419, 230 N.W. 188 (1930). Chronologically, the initial letter was sent in February, 2008, and then the agreement was reached in November, 2008, prior to the filing of the First Amended Complaint in early 2009.

P Essroc's Opp at 10-11. Simply put, any Michigan misrepresentation claim must fail for the same

reasons as the promissory-estoppel claim discussed above: among other things, as a matter of law,

it was unreasonable for Essroc to alter its behavior in reliance on Jackson's conditional offer in the February 2008 letter.  The court never reaches the question of whether Michigan courts would construe Jackson's February 2008 letter as actionable, on a fraudulent misrepresentation theory, as "a promise [regarding intended future action] made in bad faith without intention of performance."


**DISCUSSION:  Warner/Jackson's Motion for Rule 11 Sanctions**

Warner Norcross & Judd LLP and Paul R. Jackson seek an award of Rule 11 sanctions, and for the reasons that follow, the court will grant sanctions.  Preliminarily, the court notes that Warner and Jackson complied with Rule 11's procedural and timing requirements.  First, they filed a separate motion and brief in support of their sanctions request.  *See Griffin v. Reznick*, 609 F. Supp.2d 695, 705 n.6 (W.D. Mich. 2008) (Maloney, C.J.) (declining to consider request for Rule 11 sanctions because it was made only in a brief in opposition to a dispositive motion; "The drafters instruct that a 'separate' motion is one that is 'not simply included as an additional prayer for relief contained in another motion.'") (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 294 n.7 (6th Cir. 1997) and citing Fed. R. Civ. P. 11(c)(1)(A)).  Second, Warner and Jackson adhered to the "safe harbor" provision, which required them to serve their intended Rule 11 motion on Essroc at least 21 days before filing it with the court, affording Essroc an opportunity to withdraw the amended complaint (or to seek leave to further amend it to supply additional factual allegations bearing on the elements of counts nine and ten).  *See, e.g.,* denying Rule 11 motion for failure to comply with safe-harbor provision: *Bradford v. Lanphere*, 2009 WL 1606559, *2 (W.D. Mich. June 8, 2009) (Bell, J.); *Aslani v. Sparrow Health Sys.*, 2009 WL 736654, *7 (W.D. Mich. Mar. 12, 2009) (Maloney, C.J.); *accord Standard Ins. Co. v. Cooper-Pipkins*, 2008 WL 5000044 (N.D. Tex. Nov. 24, 2008).

Our Circuit recently provided a useful substantive overview of Federal Rule of Civil

Procedure 11, explaining as follows:

> Originally enacted in 1937, Rule 11 was substantially revised in 1983 and again in 1993, and stylistically revised in 2007. The 1993 amendments "broaden[ed] the scope of attorney obligations but place[d] greater constraints on the imposition of sanctions." [*Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997).] Under the current version of the amended rule:

>> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

>> (2) the claims, contentions, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

>> (4) the denials of factual contentions are warranted based on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

> Fed. R. Civ. P. 11(b). The amended rule imposes on litigants a "continuing duty of candor," and a litigant may be sanctioned "for continuing to insist upon a position that is no longer tenable." *Ridder*, 109 F.3d at 293. Whereas the pre-1993 rule made the imposition of sanctions for violations mandatory, sanctions are discretionary under the amended rule. *See* FED. R. CIV. P. 11(c)(1). Further, any sanctions imposed "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(4).

> The amended rule also "de-emphasizes monetary sanctions and discourages direct payouts to the opposing party." *Ridder*, 109 F.3d at 294 (citing FED. R. CIV. P. 11 Advisory Committee Notes (1993 Amendments)). The amended rule recognizes, however, that under unusual circumstances . . . deterrence may be ineffective unless

the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation." FED. R. CIV. P. 11 Advisory Committee Notes (1993 Amendments). Accordingly, Rule 11 expressly provides that "if imposed on motion and warranted for effective deterrence," sanctions may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." FED. R. CIV. P. 11(c)(4).

*Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir. 2009). While "Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003) (internal quotation marks and citations omitted), Essroc's assertion of counts nine and ten (promissory estoppel and misrepresentation) go beyond mere creativity, enthusiasm, or permissibly aggressive advocacy.

The test for the imposition of Rule 11 sanctions in our circuit is whether the persons' conduct was reasonable under the circumstances. *Jenkins v. Macatawa Bank Corp.*, 2007 WL 737747, *2 (W.D. Mich. Mar. 7, 2007) (Bell, C.J.) (quoting *UAW v. Aguirre*, 410 F.3d 297, 304 (6th Cir. 2005) (quoting *Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 792 (6th Cir. 1988))). For the reasons discussed above in the Rule 12(b)(6) analysis, the court determines that counts nine and ten were not only meritless; as Jackson and Warner Norcross have shown in detail in their Rule 12(b)(6) and Rule 11 briefs,[9] Essroc's claims against them were *utterly* meritless, and reasonable inquiry into Michigan

---

[9]

*Contrast Sparton Tech., Inc. v. Util-Link, LLC*, 248 F. App'x 684 (6th Cir. 2007) (Martin, McKeague, <u>E.D. Tenn. D.J. Ronnie Greer</u>):

The district court noted that "Sparton has not taken the time or put forth the effort to persuade the court" to conclude that NRTC's claim was frivolous and that Rule 11 sanctions should be imposed. Sparton has not done so in this court either. Sparton's brief contains sweeping conclusory statements concerning the lack of merit of the NRTC counterclaim but has made no effort to address the deficiencies noted by the district court in its argument. In fact, Sparton completely ignores the district court's decision on Sparton's motion for summary judgment on the counterclaim and does not cite a single reference to the transcript of the 16-day trial. Under these

common law governing promissory estoppel and fraudulent representation should have made that apparent to Essroc's counsel from the outset. *See Gilreath v. Clemens & Co.*, 212 F. App'x 451, 465 (6th Cir. 2007) ("Rule 11(b) imposes a duty on Plaintiff and Plaintiff's counsel alike to undertake a 'reasonable inquiry' into the law and facts before filing a motion with the court.") (citing, *inter alia*, *Albright v. Upjohn*, 788 F.2d 1217, 1221 (6th Cir. 1986)) (affirming award of about $20,000 in Rule 11 sanctions).

Reasonable inquiry, for example, would have quickly revealed that Jackson's February 2008 letter could not remotely be construed as making a "clear and definite" promise – or any "promise" at all – with regard to the escrowing of funds. Certainly Essroc failed to identify any Michigan case law (even mere persuasive authority such as trial-court decisions, unpublished Court of Appeals decisions, or federal-court decisions applying Michigan law) which construed statements bearing any close similarity to Jackson's as constituting a clear and definite promise which must be enforced to avoid injustice. Essroc also failed to identify any Michigan case law holding that a party was justified in relying on even roughly-similar statements in roughly-similar circumstances. Moreover, Essroc did not even come close to showing any legally cognizable, verifiable harm that it suffered by its foolish alleged reliance on Jackson's offer – which it expressly rejected – let alone identifying Michigan authority suggesting otherwise. *See generally Perfection Bakeries, Inc. v. Chauffeurs, Teamsters and Helper, Local Union No. 414*, 105 F. App'x 102, 104 (7th cir. 2004) (p.c.) (Posner, Easterbrook, Kanne) ("*Sanctions under Rule 11 may be imposed when litigants file papers without adequate investigation of the underlying facts and law or with improper motives.*") (citing *Brunt v.*

---

circumstances, we find no abuse of discretion and affirm the district court. *Id.* at 693-94.

*SEIU*, 284 F.3d 715, 721 (7ᵗʰ Cir. 2002)).  In Essroc's brief opposing Warner/Jackson's motion to dismiss, it more often resorts to conclusory assertions instead of actually presenting Michigan authority to support its argument on these elements of the promissory-estoppel and fraudulent-representation claims.  *Cf. Adams v. City of Marshall*, 2005 WL 3556146, *5 (W.D. Mich. Dec. 29, 2005) (Wendell Miles, Sr. J.) ("If Plaintiffs persist in . . . filing documents based solely on unsupported, conclusory assertions, Defendants, of course, are entitled to file a second motion for Rule 11 sanctions.").

Essroc's brief opposing 12(b)(6) dismissal also effectively asked this court to disregard clear, longstanding Michigan precedent which holds that an agent cannot be liable for action taken within the scope of his agency for a disclosed or known principal.  Essroc's counsel's insistence on continuing to seek to hold Warner/Jackson liable for actions taken in their role as agents for the original defendants tends to support the inference that Essroc's counsel interposed those claims in bad faith and maliciously.  As Warner/Jackson point out, Michigan law is crystal-clear on an agent's freedom from liability in these circumstances,

> [b]ut suing the principal for breach of the promise will disqualify the Defendants'
> legal counsel, so Plaintiff['s] . . . counsel have chosen to ignore the hornbook rule that
> an agent is not responsible for the promises made on behalf of his disclosed principal.
> * * *
> The fact that the claims were not asserted at the outset of the litigation, but only after
> settlement discussions broke down and in response to and as a means of thwarting a
> pending motion to dismiss [filed by the CP and Knowlson defendants], calls into
> question the motivation behind it.

Warner/Jackson's Motion for Sanctions at 4 and 9.

Therefore, Essroc's assertion and maintenance of counts nine and ten was not reasonable under the circumstances.  At the least, it *unnecessarily,* if not willfully, complicated and prolonged

the progression of this case. The amendment of the complaint to add them forced Jackson and Warner, Norcross to expend time, money and manpower to fend off claims that obviously had no chance of succeeding. In short, these claims were not even colorable; they were frivolous, and "[a] claim is brought in bad faith if it is frivolous." *Warren v. MDOC*, 2005 WL 2461161, *2 (W.D. Mich. Oct. 4, 2005) (Bell, C.J.) (citing *Coppedge v. US*, 369 U.S. 348, 445 (1962) and *Nabkey v. Gibson*, 923 F. Supp. 117, 122 (W.D. Mich. 1990) (Enslen, C.J.)).

**It is also troubling that by naming Jackson and Warner, Norcross as defendants, Essroc effectively compelled them to withdraw as counsel for the original defendants.** This is not to say that a party may not sue opposing counsel when existing law, or a good-faith argument for an extension or modification of existing law, might support holding counsel liable for legally cognizable misfeasance in the conduct of the litigation or related pre-litigation communications. Attorneys may not invoke their role as counsel as a talisman which immunizes them from liability for their own torts or unethical conduct in the course of litigation or pre-litigation negotiations. But when a party's claims against opposing counsel can succeed only if a federal court ignores or re-writes state decisional law – and the party fails to address binding precedent which squarely and conclusively precludes establishment of elements of its claims – the party has dragged opposing counsel directly into the controversy without good reason. Here Essroc's addition of counts nine and ten deprived CP and the Knowlsons of their chosen counsel, hampering their effort to defend themselves, with no logical basis for doing so.

Although a finding of bad faith is not a prerequisite to Rule 11 sanctions, the court finds that the refusal to abandon counts nine and ten does evince bad faith on this record. A sister court aptly explained the rationale behind this finding:

Although evidence that an action is wholly without merit does not necessarily mean that the action is taken in bad faith, continuing to prosecute a frivolous case may be evidence of such bad faith. *Stillwell*, 11 U.S.P.Q.2d at 1331 [*Stillwell Dev., Inc. v. Chen*, 1989 WL 418783, *4-5 (C.D. Cal. Apr. 25, 1989)] . . . . *Bad faith may be inferred when the specific shortcomings of the case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments raised.*

*Alamar Biosciences, Inc. v. Difco Labs., Inc.*, 1996 WL 784495, *1 (E.D. Cal. Feb. 27, 1996) (emphasis added).

**Alternately, the court also grounds this award of sanctions on 28 U.S.C. § 1927,** which authorizes the court to impose sanctions personally against any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" for the "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A district court has the discretion to impose § 1927 sanctions *sua sponte*. *See Dixon v. Clem*, 492 F.3d 665, 676-79 (6th Cir. 2007) (affirming *sua sponte* imposition of sanctions pursuant to 28 U.S.C. § 1927), *reh'g & reh'g en banc denied* (6th Cir. Nov. 23, 2007).[10] [11]

---

[10]

*Accord DCPB, Inc. v,. City of Lebanon*, 957 F.2d 913, 918-19 (**1st Cir.** 1992) (holding that under the circumstances, the circuit lacked jurisdiction to review district court's *sua sponte* imposition of § 1927 sanctions on attorney);

*In re 60 East 80th St. Equities, Inc.*, 218 F.3d 109, 113 (**2d Cir.** 2000) (affirming *sua sponte* imposition of § 1927 sanctions).

*Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 389 n.2 (**4th Cir.** 2004) (*en banc*) ("[F]ailure to comply with the safe-harbor provisions [of Rule 11] would have no effect on the court's authority to *sua sponte* impose sanctions . . . pursuant to 28 U.S.C. § 1927, or to impose sanctions within its inherent power.");

*Chavez v. City of Albuquerque*, No. 99-2359, 232 F.3d 900, 200 WL 1508835, *2 (**10th Cir.** Oct. 10, 2000) (affirming sanctions award and noting with approval Magistrate's statement that "although sanctions were not available under Rule 11(c)(1)(A), they could be imposed *sua sponte* by the court pursuant to . . . 28 U.S.C. § 1927, or under the court's inherent power.");

The question is whether Essroc's counsel unreasonably and vexatiously multiplied the proceedings within the meaning of this section. "'An affirmative answer to that question does not require a finding of recklessness, subjective bad faith, or conscious impropriety; an attorney does not have *carte blanche* to burden the federal courts by pursuing claims that he should know are frivolous.'" *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 446 (6th Cir. 2006) (Clay, J., with D.J. Oliver concurring in pertinent part) (quoting *Haynie v. Ross Gear Div. of TRW*, 799 F.2d 237, 243 (6th Cir. 1986)).

For an award of sanctions pursuant to 28 U.S.C. § 1927, "[s]imple negligence or inadvertence will not do." *Warner v. DSM Pharma Chems. No. America, Inc.*, 2009 WL 1347162, *4 (W.D. Mich. May 13, 2009). "Rather, there must be actions on the part of the subject attorney that trial judges

---

**9th Circuit**, *Lewis v. Duff*, 2008 WL 4224486, *2 (D. Nev. Sept. 4, 2008) ("A § 1927 sanction differs from a Rule 11 sanction by . . . allowing the court to impose an award of fees *sua sponte* . . . .") (citing Georgene M. Vairo, "Rule 11 Sanctions: Case Law, Perspectives, and Preventive Measures" 760-62 (Richard G. Johnson, ed., 3d ed. 2003)).

*See, e.g., Davis v. Bowron*, 30 F. App'x 373, 374 (6th Cir. 2002) ("[Defendants subsequently moved for sanctions under Rule of [sic] 11 of the Federal Rules of Civil Procedure against Mr. Davis. The Magistrate Judge recommended that their motion be denied for failure of the movants to comply with Rule 11's procedural requirements. He recommended, *sua sponte*, that sanctions be imposed pursuant to 28 U.S.C. § 1927 . . . .").

The court is aware that attorneys subject to the § 1927 sanction must be afforded an opportunity to be heard. *See Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (citation omitted) and *Buccaneer Hotel, Inc.*, 188 F.3d 172, 183 (3d Cir. 1999), *reh'g denied*, 202 F.3d 253 (3d Cir. Oct. 21, 1999) (table entry, no WL citation). Essroc's counsel availed themselves of that opportunity by filing a brief in opposition to Warner/Jackson's sanctions motion.

[11]

*Cf. Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 446 (6th Cir. 2006) (Clay, J., with D.J. Oliver concurring in pertinent part) ("The parties do not dispute that the Rule 11 motions were made after the disposition of the case on summary judgment [which did not comply with the safe-harbor provision]. Therefore, any sanction under Rule 11 constitutes an abuse of discretion. We find, however, that the district court's sanctions were proper under its alternative § 1927 holding."), *reh'g & reh'g en banc denied* (6th Cir. Dec. 27, 2007).

'could agree fall short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Warner*, 2009 WL 1347162 at *4 (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987))). This is an objective standard, which authorizes sanctions whenever an attorney "knows or reasonably should know 'that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.'" *Warner*, 2009 WL 1347162 at *4 (quoting *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986)).

While "[n]ot every violation of Rule 11 requires the court to also find a violation of § 1927", *Crossroads Media, LLC v. Village of Baldwin*, 2007 WL 772901, *6 (W.D. Mich. Mar. 12, 2007) (Bell, C.J.) (citing *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir. 1992)), the court determines that for the reasons stated above in the merits and Rule 11 discussions, Essroc's counsel's refusal to withdrew those frivolous claims in counts nine and ten the face of Warner/Jackson's safe-harbor entreaty, warrant sanctions under § 1927 as well.


**ORDER**

Defendants Warner Norcross & Judd LLP and Paul R. Jackson's motion to dismiss counts nine and ten for failure to state a claim on which relief can be granted [doc. # 38] is **GRANTED**.

Count nine (promissory estoppel) is **DISMISSED**.

Count ten (misrepresentation) is **DISMISSED**.

Defendants Warner Norcross & Judd LLP and Paul R. Jackson's motion for sanctions under FED. R. CIV. P. 11 [doc. # 40] is **GRANTED**.

In addition, the court **AWARDS** sanctions to defendants Warner Norcross & Judd LLP and

Paul R. Jackson, Esq., under 28 U.S.C. § 1927.

Essroc's attorneys Lawrence V. Stawiarski and Jessica B. Allmand and their employer McDonald Hopkins, PLLC are **JOINTLY AND SEVERALLY LIABLE** for these sanctions.

**Neither** defendants Warner Norcross & Judd LLP and Paul R. Jackson **nor** Essroc's counsel **SHALL** seek reimbursement from Essroc for these sanctions.[12]

No later than Monday, July 27, 2009, Warner, Norcross & Judd LLP and Paul R. Jackson **SHALL FILE** a detailed, itemized list of the reasonable attorneys fees and costs which they incurred to (1) prepare their motion to dismiss and the briefs in support thereof and (2) prepare said list.[13]

No later than Friday, August 7, 2009, the above-named counsel of Essroc and their employer **SHALL FILE** a notice either (1) stating that they will pay (or has paid) the fees and costs sought by these defendants or (2) lodging specific objections to items which it contends are unreasonable.

---

[12]

"Rule 11 does not permit sanctioning a client . . . when the basis for the sanction is that the pleading was legally frivolous." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001) (citing *Schrag v. Simpson*, Nos. 96-3302, 96-3321 & 96-3322, 141 F.3d 1185, 1998 WL 166629, *2 (10th Cir. Apr. 6, 1998) ("[S]uch legal matters as the frivolousness of a claim or the impropriety of a discovery request, 'which are peculiarly within the province of lawyers,' would not, without specific findings implicating knowing participation, support Rule 11 sanctions against a party.") (quoting *White v. GMC*, 908 F.2d 676, 686 (10th Cir. 1990))).

As for 28 U.S.C. § 1927, this court lacks the authority to hold Essroc itself liable for sanctions under that statute. "[U]nlike Rule 11, 'awards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards.'" *Byrne*, 261 F.3d at 1106 (quoting *US v. Int'l B'hood of Teamsters, Chauffeurs*, 948 F.2d 1338, 1345 (2d Cir. 1991)).

[13]

*See generally Garber v. Shiner Enters., Inc.*, 2007 WL 4557857, *1 (W.D. Mich. Dec. 21, 2007) (Quist, J.) (discussing burden of proof and court's method for determining reasonable fees and costs under Rule 11).

If the plaintiff objects to any of the Rule 11 fees and costs sought by these defendants, Warner, Norcross & Judd LLP and Paul R. Jackson **MAY FILE**, no later than Monday, August 17, 2009, a response to the objections.

The parties are encouraged to reach agreement on the amount of sanctions, and the court perceives no reason why they should not be able to do so.

Warner Norcross & Judd LLP and Paul R. Jackson are **DISMISSED as parties defendant**.

This is <u>not</u> a final order. *See Lakeland Regional Health Sys. v. Walgreens Health Initiatives, Inc.*, 604 F. Supp.2d 983, 1003 (W.D. Mich. 2009) (Maloney, C.J.) ("Absent certification of an interlocutory appeal under 28 U.S.C. § 1292(b) or Fed. R. Civ. P. 54(b), an order disposing of fewer than all parties or claims is nonappealable.") (citing, *inter alia*, *Wm. B. Tanner Co. v. US*, 575 F.2d 101, 102 (6th Cir. 1978)).[14]

**IT IS SO ORDERED this ___9[th]__ day of July 2009.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

---

[14]

Our Circuit reviews *de novo* the dismissal of a claim pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim on which relief can be granted. *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (Griffin, J.) (citation omitted).

A decision to impose Rule 11 sanctions is reviewed only for abuse of discretion, *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 441 (6th Cir. 2006), *reh'g & reh'g en banc denied* (6th Cir. Dec. 27, 2006), as is a decision to impose § 1927 sanctions, *Ridder*, 109 F.3d at 298 (citing *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)).